Pee Cueiam:
This case was referred to Trial Commissioner Eoald A. Hogenson with, directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57 (a) [since September 1, 1969, Rule 184(h)]. The commissioner has done so in an opinion and report filed on July 7, 1969. Exceptions to the commissioner’s opinion, findings and recommended conclusion of law were filed by defendant, plaintiff urged the court to adopt the opinion, findings and recommended conclusion of law, and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner’s opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is entitled to recover and judgment is entered for plaintiff with the amount of recovery to be determined in further proceedings pursuant to Rule 131 (c).
OPINION OE COMMISSIONEE
Hogenson, Commissioner: Plaintiff seeks judgment for the amount of disability retired pay of a first sergeant, credited with his length of Army service for pay purposes, from the date of his discharge on May 28,1962, to the present time, less the disability compensation received from the Veterans Administration during the same period, the amount of recovery to be determined in further proceedings.
After a full review of the record and upon consideration of the legal authorities cited by the parties and their respective requested findings of fact, objections, and briefs, it is my opinion based upon the following detailed and ultimate findings of fact and conclusions, that plaintiff is entitled to recover, and that judgment should be entered accordingly, with further proceedings to be held for determination of the amount of recovery pursuant to Rule 131 (c).
*584 Fundings OK Fact
1. Plaintiff, born June 1, 1931, is a citizen of the United States and resident of Luverne, Alabama. He served on active duty in successive enlistments in the United States Army almost continuously from June 3,1948, to May 28,1962, when he was honorably discharged in the grade of sergeant, based on approval of his written application of April 11, 1962.
2. In such application, plaintiff requested discharge for reasons of financial hardship, stating that upon his return from Korea in February 1959, he was assigned to duty at Fort Hayes, Columbus, Ohio; that he anticipated a 3-year tour of duty there; that he established his household at Columbus, and incurred substantial financial commitments based on his wife’s employment there; that in June 1961, he was assigned to duty in Europe, and was required to relocate his household at Luverne, Alabama, because 'his wife could not join him due to travel restrictions; that his wife was unable to obtain employment there; that marital difficulties appeared imminent; that he could not meet his obligations on his pay and allowances; that his standing in his home community had become impaired due to difficulty in meeting his obligations; and that he was subject to considerable mental stress, making it difficult to render the type of service which had enabled him to attain his present grade. He made no mention of physical difficulties, and the application was based solely on grounds of financial hardship.
3. In the period from February 1952 to November 1955, as hereinafter related in findings 14 through 18, plaintiff was on several occasions hospitalized by the Army for diagnosis and treatment of various injuries incurred while serving on active duty. These included traumatic arthritis of the cervical spine, resulting from injuries to cervical vertebrae in 1954, and traumatic arthritis in the knees, resulting from frequent injuries to the knees from 1954. He also suffered a neuro-sensory hearing loss in the high frequencies, which was caused by a mine fuze explosion in 1952.
On each occasion of hospitalization or other physical examination, plaintiff was returned to duty, although sometimes with .temporary limitations on his activities. In all *585 physical examinations for reenlistment or separation, throughout his successive enlistments, plaintiff was found qualified for general service. In reports of examinations held in 1957, 1959, 1960, and 1962, all after his last hospitalization in 1955, it was related that plaintiff stated successively to examining physicians that his present health was good, or that it was good except for a little trouble with conversation due to nerve loss in the left ear, or that to the best of his knowledge, his health was all right.
4. Plaintiff’s last permanent duty station was at Baum-holder, Germany. However, for the first 3 or 4 months, he was on temporary duty assignments with Army units at Verdun and Etain, France, and at Vilclflicken, Germany, performing regular duties as a first sergeant, including marching with troops and physical training. Plaintiff was limping because of the arthritic condition of one knee, was having difficulty hearing high-pitched voices, especially in telephone conversations, was experiencing spasms in the lower part of his back, and had gastritis and a nervous stomach, requiring him to resort to a milk diet when he could. Plaintiff was then relieved of his assignment and returned to battalion headquarters at Baumholder, being told that he was being reassigned to receive extra training in administration. He received no such training, but was assigned under a captain to supervise two or three privates in such tasks as the battalion trash truck run, storing mess hall equipment, cleaning and airing of a tent, and checking the storage of combat equipment in cargo trailers.
5. Plaintiff had pride in the performance of his duties as first sergeant in the temporary duty assignments in France and at Vildflicken, Germany, and he did his best to perform fully. On November 28, 1961, his company commander advised the battalion commander in writing, in connection with plaintiff’s application of that date for appointment as a warrant officer, that plaintiff had demonstrated outstanding ability, that he had carried out routine daily assignments without break in the normal daily operation of the unit, that his efficiency and ability to deal with subordinates were above reproach, that his perseverance had kept the company operating at maximum efficiency, and that he was physically *586 and mentally fit, and that he would be an outstanding warrant officer.
Upon his reassignment to menial duties at Baumholder, with a permanent grade of master sergeant, plaintiff felt that he was not being utilized in accordance with Army standards for his grade, and with his prolonged limping, his willpower failed, and he sought and obtained discharge on grounds of financial hardship, as the best way he knew how to get away from the situation.
6. At the time plaintiff applied for the hardship discharge, and for some time prior thereto, plaintiff was treated by an Army doctor at the Baumholder dispensary for stomach disorders. Plaintiff told such doctor about his pending application for hardship discharge, his limping was apparent, and he asked the doctor about appearing before a physical evaluation board. The doctor stated that the dispensary was not staffed for such proceedings, and that if plaintiff’s application for discharge was approved, he should await his return to the United States for physical evaluation board proceedings.
On March 23,1962, plaintiff was treated at the outpatient clinic of the Army general hospital at Neubruecke, Germany. The clinical record in summary is that plaintiff had for 12 months experienced indigestion and stomach disorders, with gaseous belching and some nausea, relieved by consumption of milk, with the process getting neither better nor worse; that plaintiff had had a fractured neck, without residuals; and that plaintiff had experienced occasional recurrent swelling of the right knee, requiring aspiration periodically. It was stated that plaintiff’s general health had always been good.
7. Following approval of plaintiff’s application for a hardship discharge, he was given a separation physical examination on May 8, 1962, at the Army hospital at Neu-bruecke, Germany, located about 5 miles from the Baumholder dispensary. The doctor in the X-ray department advised plaintiff that he had arthritis in his knee, paid special attention to plaintiff’s limping, and they had considerable discussion about physical evaluation board proceedings. This doctor stated that his hospital lacked facilities for *587 that purpose, and advised plaintiff to wait until he arrived at Fort Dix, New Jersey, knowing that plaintiff was scheduled to report there for discharge.
The report of such examination states that plaintiff was qualified for separation, with a physical profile rating of P-1, U-l, L-2, H-2, E-l, S-l.
The orthopedic consultation report in such separation examination states that plaintiff had mild traumatic arthritis of his right knee; that plaintiff had experienced occasional swelling and catching of both knees, with the last significant trouble being in September 1961; that he had full range of motion of both knees, and there was slight crepitus but full flexion of his right knee.
The examination report indicated that plaintiff’s high frequency hearing loss resulted from explosion of a mine fuze in his hand in 1952. While plaintiff’s spine was checked off on the form as normal, the examination report made brief mention of arthritis of the C-5 and C-6 vertebrae, fractured or dislocated, and treated in 1954 at Fitzsimmons Army Hospital, Denver, Colorado, with a permanent U-3 profile then given. Such report also noted internal derangement of plaintiff’s knees in 1955, when plaintiff fell off a 100-foot cliff.
8. Pursuant to a special order issued about May 15, 1962, plaintiff was directed to report to Fort Dix, New Jersey. Instead, when he arrived at New York City about May 25, 1962, he was sent to Fort Hamilton, New York, where he was discharged from the service on May 28, 1962.
The discharge procedure involved a meeting between plaintiff, a sergeant first class, and a young second lieutenant named Gerald Haggerty whose name appears on plaintiff’s discharge certificate. The sergeant actively handled the matter, with the lieutenant sitting at a nearby desk, listening and observing the procedure. Plaintiff asked the sergeant about a hearing before a physical evaluation board and was told that if he had a complaint against the Army, he should fill out some papers and sign them. He was then given several forms which he filled out and returned to the sergeant. In his testimony -before this court, plaintiff could not remember what kind or type of forms were involved, whether Department of the Army, Department of Defense, or Veterans Ad *588 ministration, but be was certain that he filled out several kind's and returned them to the sergeant. Within 2 or 3 days, plaintiff was discharged and returned to his home in Alabama.
On May 28,1962, plaintiff signed a Statement at the Army Personnel Center, Fort Hamilton, New York, to the effect that there had been no change in his physical condition since his last physical examination on May 8,1962.
9¡. Upon returning to his home in Alabama, plaintiff worked for his brother in the home construction business. He attempted to perform physical labor, which resulted in swelling of his knees, and required bed-rest and aspiration by needle of his knee joints. He functioned essentially as a materials supplier, making purchases and arranging deliveries to construction sites, still trying to do some physical labor. He became unable to operate an automobile, as he could not apply clutch and brake pedals 'because of his knees. His hours of employment were irregular. He held this employment for about a year, when he quit because he felt he was “welshing,” to use his own word.
10. After terminating employment with his brother, plaintiff engaged in the construction of three houses on property which he owned. He hired three people to do the work and contributed very little of his own labor. He supervised construction, and made purchases of materials, exerting effort to minimize costs. He performed labor when he could, but experienced the same trouble he had had when employed by his brother. The construction of the houses commenced about September 1963, and was completed in June or July 1964. Thereafter plaintiff has not undertaken performance of any kind or type of gainful employment. He did, however, apply and pass written tests for employment at Eglin Air Force Base, and later received notice to appear at such base for an employment interview.
11. On April 11, 19.66, plaintiff was given a physical examination at the Eglin Air Force Base hospital in connection with his application for employment at that base, and on September 9,1966, he was advised that he was ineligible for such employment because he was not medically acceptable. Plaintiff’s appeal of this ruling to the regional office of the Civil Service Commission was denied.
*589 12. Findings 13 through 18 summarize pertinent parts of plaintiff’s Army medical record, relating to treatment and hospitalization for injuries and illnesses sustained by him during his Army service. In each case, plaintiff was eventually returned to active duty for general service, although restricted temporarily on some occasions to limited activities.
13. Plaintiff’s first medical treatment was received on August 30,1950, for fracture of his left thumb, sustained on duty when he accidentally dropped a piece of metal on his thumb. A splint was applied, and penicillin administered. He was returned to duty for general service on September 8, 1950, and the record discloses no residual disability from this injury.
14. On February 25, 1952, plaintiff sustained second degree burns on his left hand by the explosion of a chemical fuze from a training mine, for which he required and received medical and hospital treatment until about March 26, 1952. The Army record shows no residual disability, except for hearing loss previously mentioned.
15. Plaintiff next received medical and hospital treatment for a pilonidal cyst, which was excised on October 20, 1953. He was returned to duty on November 5,1953, as apparently cured, with the doctor’s recommendation that he perform light duty only for a period of 10 days, and that he avoid riding in Army vehicles as much as possible during the remaining period of his current enlistment. The Army record shows no residual disability.
16. In August 1954, plaintiff,- experiencing pain in his neck and shoulders, had two X-ray examinations of the cervical region of his spine, conducted at ¡the Army hospital at Fort Eiley, Kansas. Both radiographic reports showed that there existed an anterior subluxation of the C-5 vertebra on the CM) vertebra, with no evidence of compression of the vertebral bodies, except for the anterior-superior margin of C-6, and with no definite evidence of fracture of either -vertebra.
On October 21, 1954, plaintiff complained to -a doctor at the Army dispensary at Fort Eiley, that he was experiencing increasing pain in his neck, whereupon that doctor requested a consultation report from the Army hospital thére. Such *590 report, dated October 22, 1954, when plaintiff was admitted to such hospital, stated that plaintiff had pain on pressure over the C-5 and C-6 vertebrae; that he was definitely having trouble due to an old subluxation of the C-5 on the C-6 vertebra and an old fracture of the C-7 vertebra, which had healed, and that there were osteoarthritic changes of the bodies of the C-5 and C-6 vertebrae. It was recommended that plaintiff be sent to Fitzsimmons Army Hospital, Denver, Colorado, for further care and treatment. The Fort Riley clinical summary report, dated October 22, 1954, stated in addition to the foregoing diagnosis, that plaintiff had had an automobile accident in May 1954, with injury to neck, although X-rays at that time were negative; that his neck hurt at the time, but cleared up; that in August 1954, plaintiff fell over a ditch while playing ball, that his neck snapped but didn’t hurt, but was stiff the next morning. Such clinical summary showed that contemporaneous X-ray examinations confirmed the condition of the vertebrae, as revealed in the August 1954 radiographic reports.
On October 24,1954, plaintiff was admitted to Fitzsimmons Army Hospital, Denver, Colorado, on direct transfer from the Fort Riley hospital. He remained there until December 9, 1954, when he was returned to 'limited duty, with a permanent U-3 profile, and with a recommendation that he perform no calisthenics, heavy lifting or arduous physical exercise. It was recorded that he had experienced pain in his neck, radiating into his shoulders; that he had marked limitation of motion of his cervical spine, but that his symptomatology was not incapacitating; and that no further therapy such as a cervical fusion was indicated 'at that time.
At the Fitzsimmons hospital, plaintiff received routine diagnostic and therapeutic treatment and evaluation, and previous X-ray reports were confirmed. He had physiotherapy with hydrocolator packs and range of motion exercises, with some head traction, which latter was noted to have increased his symptomatology. It was recorded that he had stiffness on arising, which subsided after minimal activity. It was suggested that he might later have severely incapacitating symptomatology, secondary to osteoarthritic changes, and if such eventuality occurred, cervical fusion could be performed.
*591 17. On March. 7, 1955, plaintiff was admitted to the neurology ward of the hospital at Font Leonard Wood, Missouri. With past medical history recited, a diagnosis of arthritis of the cervical spine was made, being Diagnostic Code No. 7250, arthritis, cervical spine, post-traumatic, line of duty. The usual anti-arthritic dosages of sodium salicylate were given, from which plaintiff was stated to have experienced no relief.
On March 24,1955, he was transferred to the Brooke Army Hospital at Fort Sam Houston, Texas, with the same diagnosis made there and the same medical history stated. It was stated that since plaintiff’s injury at Fort Biley, Kansas, he had had repeated bouts of cervical pain, which radiated into the cervical region and distally down the thoracic spine posteriorly, and in a vertical line on the anterior aspect of the chest involving the sternum; and that the pain had become more severe in the past 6 weeks.
On April 12, 1955, plaintiff was returned to duty for general service.
18. Plaintiff was next hospitalized at the Army hospital at Fort Leonard Wood, Missouri, on or about November 25, 1955, when he was admitted because of trouble with his right knee. Such knee had a moderate amount of peri-patellar swelling, existing without trauma for 3 weeks, but such knee was otherwise normal in appearance. Plaintiff’s knee was treated by traction, and was aspirated on November 28. It was recorded that plaintiff had an internal derangement of his right knee. On December 2,1955, he was returned to duty, with no prolonged marching or standing, which limitation was to be automatically released on January 2, 1956.
As previously stated in finding 6, plaintiff’s Army medical record indicates that his right knee had been aspirated periodically prior to the entry of March 23, 1962, and other entries show aspiration of his left knee on September 11, 1961, and aspiration of both knees on December 15, 1959, with medication prescribed on October, 10,1960, for a swollen post-traumatic knee.
19. In September 1962, plaintiff called at the Montgomery, Alabama, office of the Veterans Administration, and requested that office to try to find the forms plaintiff had filled *592 out in. bis discharge procedures about May 25, 1962, at Fort Hamilton, New York. Instead, plaintiff was told that if he wanted to initiate action, he should file a claim then.
On September 17,1962, plaintiff filed a claim with the Veterans Administration at Montgomery, Alabama, for disability compensation. He listed as the basis of his claim, and the date on which each began, the following disabilities: Cyst operation, 1950; mine fuze explosion in hand, 1952; defective hearing, 1952; fractured neck, 1954, arthritis of cervical spine, 1954; internal derangement of right knee, 1955; hearing loss, 1958; arthritis of legs, 1962; and stomach trouble in his last year, of Army service, detected in 1960.
Immediately thereafter plaintiff by letter inquired at Fort Hamilton, New York, concerning the forms he had filed there, and pursuant to the reply, wrote to and obtained from the Army record holding and storage installation at St. Louis, Missouri, a reproduction copy of the Veterans Administration claim form, which 'he had filled out and left with the Army sergeant during his discharge procedure. Plaintiff then forwarded such copy to the Veterans Administration, with the request that his September 1962 claim be corrected to show that his claim was made prior to his discharge from the Army. . .
20. Other than where the context indicates otherwise, findings 21 through 37 summarize pertinent parts of plaintiff’s Veterans Administration file, in addition to his September 1962 claim mentioned in the preceding finding.
21. On March 3,1954, plaintiff filed a claim for disability compensation with the Veterans Administration. Plaintiff was then in a period of civilian status between enlistments, with his next period of Army service commencing on May 23, 1954. He based his claim on the following: Left hand injury from mine fuze explosion, February 1962; and operation for pilonidal cyst, October 1953. Upon his reenlistment, plaintiff requested and his claim was by the Veterans Administration placed in a disallowed status as of June 7, 1954, with the right reserved to plaintiff to reopen the claim after expiration of his then period of service.
*593 As shown by plaintiff’s Army medical record, plaintiff was found physically qualified for reenlistment on May 20, 1954, with an Army profile rating of 1 in all categories.
22. On May 10, 1954, plaintiff was admitted to the Veterans Administration Hospital, Montgomery, Alabama, for treatment of injuries sustained by him in an automobile accident 8 days earlier. Plaintiff complained of pain and stiffness in his neck. He was discharged on May 18, 1954, with final diagnosis of contusion, cervical musculature, improved; and lacerations, minor, right face and ear, cured.
The automobile accident and the hospitalization occurred while plaintiff was a civilian in between periods of Army enlistment, and his release from the hospital occurred 2 days prior to his reenlistment physical examination.
23. On December 21, 1962, the Veterans Administration rating board made its decision on plaintiff’s September 1962 claim, after a VA physical examination conducted on November 27,1962.
The board determined service connection for cyst operation; mine injuries; fractured neck; derangement of right knee; hearing loss; stomach trouble, arthritis of cervical spine; and arthritis of legs.
Plaintiff’s combined disability rating was determined to be 10 percent from May 29, 1962, to August 31, 1962, based on a 10 percent rating for traumatic arthritis, right knee, under VA Diagnostic Code No. 5010; and 20 percent from August 31,1962, based on addition as of that time of an additional 10 percent rating for scars, left hand, under Code No. 7804.
The disability of the left hand was ascribed to lacerations of the palm and forefinger as a result of a mine cap explosion in 1952, with no nerve or artery involvement, with the current VA examination showing that plaintiff had tender scars of the left hand, making it a little difficult to grasp objects.
Regarding plaintiff’s knees, the board stated that plaintiff was seen in November 1955 for pain and swelling of the right knee, and internal derangement was then diagnosed; that in *594 1959, be complained of botb knees; that on September 11, 1961, bis left knee was aspirated; and that in 1962, on the basis of X-ray and clinical findings, minimal traumatic arthritis of the right knee was diagnosed.
It was determined that plaintiff had ratings of no percentage of disability for the following: Effusion, left knee, under Code No. 5257; and pilonidal cyst, post operative, under Code No. 7819.
It was stated that gastritis was not found on plaintiff’s last examination on November 27,1962.
Eating as to defective hearing was deferred for report of audiology examination. Eating as to traumatic fusion of cervical vertebrae was deferred for additional service records and a report from Maxwell Air Force Base Hospital.
24. On August 21, 1968, the VA rating board made its decision on evaluation of plaintiff’s defective hearing, noting that plaintiff’s last VA physical examination was conducted on March 4,1963, and stating that the audiology examination report had been received, showing that plaintiff had discrimination ability in his right ear of 96 percent and in his left ear of 82 percent, and that his speech reception threshold showed a minus two decibel loss in his right ear and no decibel loss in the left ear.
It was determined that plaintiff’s rating was no percentage of disability for service-connected defective hearing under Code No. 6297. The previous ratings were restated on scar, left hand ('amended as set forth below); traumatic arthritis, right knee; pilonidal cyst, post operative; and effusion, left knee.
The board stated that subsequent to the prior rating decision, official service records had been received showing that a claim for compensation had been filed prior to plaintiff’s release from service, and the previous rating of 10 percent for scar, left hand, was amended to be effective from May 29, 1962.
Thus, the combined rating allowed in this rating decision was 20 percent from May 29,1962.
Eeference was made by the board to its prior rating decision for the facts involved in the claim. It was therein stated with respect to defective hearing, that a hearing loss was *595 noted in 1958, that physical examination of the ears showed no abnormality, but that a diagnosis of .nerve type bilateral deafness was advanced.
25. On October 28, 1963, the VA rating board made its decision, after receiving supplemental service records, on plaintiff’s injury to his cervical spine, and expressly amended its rating decision of August 21, 1963, to grant service connection for such injury.
In its rating decision of December 21,1962, at which time rating of the cervical spine injury was deferred, the board stated that in May 1954, between periods of active service, plaintiff was involvd in an automobile accident from which he sustained an injury of the cervical spine; that no significant abnormalities were noted in his reenlistment examination shortly thereafter; that in August 1954, he complained of neck pain, and a subluxation of C-5 and C-6 vertebrae was diagnosed; that he continued to complain intermittently of pain of the neck, and to receive treatment for such condition, further diagnosed as subluxation or traumatic arthritis of the cervical spine; and that the current VA X-ray showed a slight deformity of the cervical vertebrae at the junction of C-5 and C-6, which were fused.
In its October 28, 1963, decision, the rating board further stated regarding plaintiff’s cervical spine condition:
if: # ^ # &
Supplemental service records show that he was treated in October 1954 for arthritis due to direct trauma to C5 and C6, accidentally incurred while playing football in August 1954. The evidence clearly shows that the injury was incurred in service and not in an automobile accident prior to reentering service.
VA examination of 11-27-62 shows on x-ray a localized posterior angulation at the junction of C5 and C6 which are fused. There was no evidence of active disease other than the slight deformity and fusion and minimal limitation of motion.
ifi H* H* $ ‡
Restating all of its previous ratings, as amended, the board in addition allowed plaintiff a disability rating of 10 percent from May 29, 1962, for fracture, C-5 and C-6, with slight limitation of motion, under Code No. 5290.
*596 Thus, plaintiff was allowed a combined rating of 30 percent from May 29,1962.
26. Plaintiff appealed the rating decision of October 28, 1963, to the YA Board of Veterans Appeals.
27. Under date of January 13, 1964, the rating board prepared and shortly thereafter issued to plaintiff, its supplement to statement of the case, summarizing in detail plaintiff’s Army medical record from February 25,1952, to May 8, 1962, and other evidence considered by the board, together with a summarization of the proceedings and actions of the board.
Treating plaintiff’s stated exceptions to its decisions, in effect as a motion for reconsideration, the board denied increased evaluation for each of the following: Traumatic arthritis, right knee; effusion, left knee; and scars, left hand. Service comiection for gastritis was denied.
The board stated that in the absence of evidence to the contrary, it would be assumed that there was agreement with the granting of service connection for the neck injury, with the 10 percent evaluation assigned, but that if there was disagreement, the board should be promptly notified so that a statement of the case coidd be prepared with respect to such issue.
The board advised that its supplement to statement of the case was not to be construed as a decision on the appeal initiated by plaintiff, but was furnished as required by law to help plaintiff complete his appeal.
In connection with his appeal, plaintiff had supplied the rating board with a report of ear examination of plaintiff by Dr. B. F. Holding, Jr., showing speech discrimination scores of 88 percent in the right ear and 64 percent in the left ear, indicating substantial disability, and also showing some hearing defect at high frequencies.
The board deferred pending another examination, consideration of increased evaluation for defective hearing, and advised plaintiff that proper notice would be furnished as to date and place of special hearing examination authorized.
28. An additional appeal having been filed by plaintiff on February 3,1964, the Board of Veterans Appeals on April 1, 1964, issued its memorandum decision, in which it was stated *597 that from a review of the evidence then available, it was decided that the case should be remanded for the following action: (1) The veteran should be examined to determine the true nature and extent of his service-connected disabilities, including the ear disorder, if such had not already been done, as well as the nature and degree of any gastrointestinal disability that may now be present. (2) Adjudicative action should be taken with respect to the evidence received subsequent to certification of the appeal. (3) A report of the special ear examination, which it is shown was scheduled in January 1964, should 'be made available if 'completed. Otherwise, such examination should be accomplished. (4) The outpatient treatment folder should be made available.
The Board of Veterans Appeals directed reconsideration of the case by the originating agency, and if all benefits sought on appeal were not granted, return of the claim to the board for further appellate consideration.
29. On June 11, 1964, the rating board made a rating decision on plaintiff’s claim, noting that plaintiff’s last physical examination was conducted on May 11, 1964.
Plaintiff was given a combined disability rating of 30 percent from May 29,1962, based on the following ratings, each from that date: 10 percent, scars, left hand, Oode No. 7804; 10 percent, fracture CM) and C-6, with slight limitation of motion, Oode No. 5290; zero percent, pilonidal cyst, post operative, Code No. 7819; 10 percent, traumatic arthritis, right knee, Code Nos. 5010, ’5003; zero percent, defective hearing, Oode No. 6297; zero percent, effusion, left knee, Code No. 5257; and zero percent, gastritis.
It was determined that the gastritis had service connection effective from date of discharge. It was stated that the May 11, 1964, examination showed complaints of gastritis, symptomatic, with burning When the stomach was empty.
It was further stated that the current rating was for purpose of outpatient treatment only, that an audiology examination was outstanding, and that complete evaluations would be made upon receipt of such examination.
30. Plaintiff was admitted to the Veterans Administration Hospital at Montgomery, Alabama, on September 4,1964, and *598 received treatment there until discharged on September 18, 1964, with maximum hospital benefits obtained. The 'hospital summary showed that plaintiff complained of recurring attacks of pain in the neck and both knees, with locking of the knees and episodes of swelling and redness; and that he walked with a limp. There was tenderness over the cervical and lumbar spine, with moderate restriction of motion of the neck. There was a slight effusion of the right knee, but no warmth or redness. X-rays of the cervical spine showed minimal hypertrophic changes and fusion of the 5th and 6th cervical vertebrae. X-rays of the lumbosacral spine showed a spina bifida occulta of S-l, with a narrow L-5 disc space. X-rays of both knees were normal. The orthopedist made a diagnosis of traumatic arthritis of the knees. Plaintiff was ambulatory at the time of discharge, and was permitted to return to prehospital activities immediately, but with continued treatment by his private physician.
Plaintiff’s VA records show that he was periodically hospitalized and treated 'at the same hospital during the fall of 1964, and the hospital summary showed that plaintiff walked painfully because of markedly swollen tender knees, and that there was slight limitation of flexion and extension of the head, with a slight forward tilt, painful on lateral bending, with motion of the head limited to 45 degrees rotation to the right and 60 degrees to the left. The left knee could be flexed only 90 degrees and extended to only 165 degrees. Physiotherapy resulted in gradual subsiding of swelling of both knees, with marked improvement in pain, as far as weight bearing and motion were concerned, but the knees were somewhat stiff and painful at the time of discharge.
On November 5, 1964, the diagnosis was made that plaintiff had rheumatoid arthritis, with involvement of both knees, both sacroiliac joints, and traumatic arthritis, cervical spine. It was stated that there was no evidence of remission of the rheumatoid arthritis, and that there was a probability of recurrence of acute physical and industrial disability, and need for more intensive treatment. The traumatic arthritis, cervical spine, was expected to cause more stiffness and disability with increasing age.
*599 31. On January 5, 1965, plaintiff’s condition was rated by the rating board on remand of his claim from the Board of Veterans Appeals.
Plaintiff was awarded a combined disability rating of 50 percent from December 1,1964, and of 60 percent from December 4,1964, based on the following ratings: Rheumatoid arthritis, multiple joints (knees and back), 100 percent from September 29,1964,40 percent from December 1,1964, under Diagnostic Code No. 5002; defective hearing, zero percent from May 29, 1962, Code No. 6297; gastritis, zero percent from May 29, 1962, Code No. 7307; fracture, C-5 and C-6, with moderate limitation of motion, 10 percent from May 29, 1962,20 percent from December 4,1964, Code No. 5290; scar, left hand, 10 percent from May 29,1962, Code No. 7804; and pilonidal cyst, post operative, zero percent from May 29, 1962, Code No. 7819.
The rating board stated that its prior rating action was revised on the basis of supplemental medical evidence, i.e., the VA treatments, examinations and hospitalization of plaintiff in the period from September to December 1964; and that following the total hospital evaluation, the diagnostic codes for the knees were revised and considered under rheumatoid arthritis, producing definite impairment of health, objectively supported by examination findings and made effective December 1, 1964. It was further stated that limitation of motion of the cervical spine was considered moderate from December 4,1964.
32. On February 17,1965, the rating board supplied plaintiff with a supplemental statement of the case, not as a decision on, but to aid plaintiff in completing his appeal. This reviewed in detail the previous action that had been taken and the additional evidence considered. The board confirmed its ratings made on January 5,1965.
33. On August 6,1965, the Board of Veterans Appeals announced its findings and decision on plaintiff’s claim. It recited in detail and in chronological order the various illnesses and injuries which plaintiff had sustained while serving in the Army and the action which had been taken with respect to them. It made findings of fact as follows: (1) Incapacitating exacerbations of rheumatoid arthritis do not occur fre- *600 quenbly and the condition does not cause severe impairment of health or result in weight loss or anemia. (2) The veteran has essentially normal hearing in each ear. (3) He is shown to have some abdominal tenderness on deep palpation and mild symptomatic manifestations of gastrointestinal distress. (4) He has some limitation of motion of the cervical spine with X-ray changes demonstrated. (5) The maximum rating is currently in effect for. tender and painful scars of the left hand. (6) There is a well-healed, nonsymptomatic scar resulting from excision of the pilonidal cyst.
The Board of Veterans Appeals sustained the ratings of disability, ruling that the schedular requirements had not been met for a rating of more than 40 percent for rheumatoid arthritis, multiple joints; of more than 20 percent for fracture, C-5 and C-6; of more than 10 percent for scars, left hand; or for compensable ratings for defective hearing, gastritis, and post operative residuals of pilonidal cyst. However, the appeal was allowed to the extent that plaintiff was held entitled to have the 40 percent rating for rheumatoid arthritis, multiple joints, and the 20 percent rating for fracture of C-5 and C-6, assigned from May 29, 1962, the day following plaintiff’s discharge from the service.
34. In implementation of the decision of the Board of Veterans Appeals, the rating board on August 12, 1965, entered its rating decision, allowing plaintiff a combined disability rating of 60 percent from May 29, 1962, an interim rate of 100 percent from September 29,1964, to December 1, 1964, and thereafter 60 percent. The rating board amended its individual ratings of January 5,1965, as stated in finding 31, only to show that the 40 percent for rheumatoid arthritis and the 20 percent for fracture, C-5 and C-6, were effective from May 29,1962.
35. Plaintiff has continued to receive treatments either provided by or sponsored by the Veterans Administration. The rating board has adhered to its ratings of August 12, 1965. On March 30, 1966, the VA conducted a physical examination of plaintiff, for disability evaluation. In the orthopedic examination report, the orthopedist stated that plaintiff complained of pain with almost every test or manipulation, while there was very little change in facial expression, *601 that plaintiff was uncooperative in that he could not or would not relax sufficiently to permit the examination to proceed rapidly, but that he finally cooperated after repeated admonishments. It was his stated opinion that a good many of plaintiff’s complaints were consciously or subconsciously motivated. He concluded that there was no limitation of motion of any of the upper or lower extremities, that the cervical spine was limited in all directions to 50 percent of normal, that the dorsal spine revealed no changes in normal curves, nor did the lumbar spine. He stated that examination of the knee joints revealed no swelling, tenderness, limitation of motion or instability. He stated that the X-ray studies of November. 28, 1962, revealed no orthopedic pathology, that there was a posterior angulation at the fusion, but that the cervical vertebrae otherwise had a normal lordotic curve. He stated that there was no evidence of active diseases, other than the slight deformity and fusion in the cervical spine. His diagnosis was: Arthritis, multiple, history of, not found at this examination. He concluded that he failed to find sufficient evidence, objectively, to account for plaintiff’s subjective complaints.
On May 2, 1966, the rating board made a rating decision, specifically referring to the physical examination of March 30,1966, and stating that such examination showed arthritis, multiple joints, mentioning the conclusion of the orthopedist, and concluding that no material change was presently shown in the service-connected disabilities, although the rheumatoid arthritis might be in some remission at the time.
The rating board confirmed entirely its rating of August 12,1965, described in finding 34.
36. The last-mentioned rating decision stated that plaintiff had submitted affidavits and statements of various persons, all attesting to the fact that he had been on medication for stomach trouble with complaints, and further that the March 30,1966, examination showed recurrent gastritis with medication recommended, and that plaintiff had been taking medication as prescribed. The diagnosis was gastritis and psychophysiologic gastrointestinal tract reaction, with no disassociation determinable between the two conditions.
*602 On October 14, 1966, the rating board supplied plaintiff with a statement of the case on the issue of evaluation for service-connected gastritis, containing a summary of the evidence, and confirming prior denial of increase in the evaluation assigned for his service-connected gastritis. It was stated that gastrointestinal series tests had been completely normal. By rating decision dated October 14, 1966, the rating board stated that plaintiff’s service-connected gastritis had a disability rating of zero percent from May 29, 1962, under Code No. 7307. It was stated that the August 12, 1965, rating was amended to dispose of this additional disability, and that the combined rating was 60 percent from December 1,1964.
37. On March 20, 1967, the Board of Veterans Appeals issued its findings and decision on plaintiff’s appeal claiming entitlement to a compensable rating for service-connected gastritis. After stating the evidence of record, the board found and concluded that the requirements of a 10 percent evaluation, effective March 10, 1966, for plaintiff’s service-connected gastritis had been met, and decided that plaintiff was entitled to a compensable evaluation of 10 percent from that date for that disability. The board concluded, however, that such allowance did not result in an increase in the combined evaluation of 60 percent, then assigned to plaintiff’s various service-connected disabilities, in effect since December 1,1964.
By a rating decision, dated March 28, 1967, the rating-board implemented the March 20,1967, decision of the Board of Veterans Appeals.
38. On August 9, 1965, plaintiff filled out and signed on the official Department of Defense form, his application to the Army Board for Correction of Military Becords. Plaintiff was supplied the form when he went to the office of Veterans Affairs, State of Alabama, to inquire about procedures for obtaining a change in the type of his separation from Army service. A representative of that office assisted plaintiff in filling out the form, and as suggested by him, the American Legion, 1608 K Street, N.W., Washington, D.C., was designated as counsel for plaintiff. Plaintiff was told that no *603 attachments were necessary to substantiate the claim, because his records would be pulled and checked. Without supporting documents, the claim was forwarded to the Army Board for Correction of Military Records, and duly received.
In such claim, under the box entitled “I request the following correction of error or injustice and request payment of any amounts found to be due on account of such correction plaintiff stated:
I was discharged from service without the benefit of a P.E.B. The Veterans Administration rated me 60 percent disabled from the date of discharge. I believe my Army records and the Veterans Administration records will contain sufficient evidence to establish this disability.
Of course, plaintiff supplied his Army service number and the date of his discharge. He also stated that the evidence in support of his application was his medical records from the Army and the Veterans Administration.
39. On November 1,1965, the Army Board for Correction of Military Records forwarded plaintiff’s application, together with his Army personnel file, his Army medical record, and a VA compensation statement, to the Physical Standards Division of the Office of The Surgeon General, requesting that office to furnish a comprehensive opinion for the guidance of the board, regarding the medical issues raised by the applicant. An opinion was also requested regarding the advisability of having the applicant appear before a medical or physical evaluation board for determination of the issues involved, together with such other comment as may be appropriate and helpful in the adjudication of the case.
40. On February 9, 1966, a full one-page letter was supplied to the Army Board for Correction of Military Records, signed by Lt. Colonel Charles J. McGee, M.C., Physical Standards Division, for The Surgeon General, in which it was stated that records in the case of plaintiff had been carefully reviewed, but no statement was made as to what the records were. There followed a statement of the various ratings made by the Veterans Administration from December 21,1962, to August 12,1965. Then, a brief statement was *604 mad© concerning plaintiff’s Army separation physical examination of May 8,1962, as follows:
*****
* * * prior to separation, on 8 May 1962 the separation medical examination showed diagnoses of traumatic arthritis, right knee; scar, right cheek; high frequency hearing loss; PULHES profile 112211. On Standard Form 89, item 17 read, “To the best of my knowledge, my health is okay”; item 40 indicated a history of fracture of C5-6, dislocated vertebra. The orthopedic consultation X-ray showed minimum traumatic arthritis, right knee; full range of motion, both knees, ligaments stable, no effusion, slight crepitus and full flexion of right knee, McMurray’s negative; impression: mild traumatic arthritis, right knee, L2 profile.
* * $ * ❖
It was stated that the Chief Medical Consultant to The Surgeon General was of the opinion that plaintiff’s records failed to reveal any unfitting medical condition existing during his service, or any evidence of any unfitting surgical condition at the time of his separation. The letter then stated as follows:
*****
A finding of medical unfitness under the provisions of Chapter. 3, AE 40-501 (retention medical fitness standards) is a prerequisite for the granting of Army physical disability retirement or separation benefits. Most individuals of long service, like Sergeant Taylor, possess one or more ratable medical conditions or physical defects..The mere possession of such conditions or defects, ratable in accordance with the Veterans Administration Schedule for Eating Disabilities, is not, however, sufficient for Army disability retirement in the absence of medical unfitness.
*****
The letter concluded with the opinion expressed that plaintiff was not medically unfit at the time of his separation on May 28,1962.
41. The Correction Board had before it plaintiff’s application for appointment as a warrant officer and his company commander’s written recommendation pertaining thereto, *605 both dated November 28, 1961, the latter being summarized in finding 5.
The board also had before it plaintiff’s request for reassignment from Company D, 293d Battalion, to Headquarters, 54th Engineer Battalion, Vildflicken, Germany, and his company commander’s endorsed approval, stating that plaintiff’s broad background in combat type units and his extensive specialized training would definitely be better utilized in a combat battalion. This application was made on February 27, 1962, when plaintiff was assigned to duties at Baumholder, as related in finding 4.
42. On March 23,1966, the Army Board for Correction of Military Records determined that insufficient evidence had been presented to indicate probable error or injustice, and denied plaintiff’s application.
On March 24, 1966, the board requested The Adjutant General to so advise plaintiff, and shortly thereafter plaintiff was notified.
43. Under date of April 25, 19,66, on the official form of the Department of Defense, plaintiff submitted another application to the Army Board for Correction of Military Records, stating that the requested corrective action was that his discharge be under disability instead of honorable. He based the application upon his Veterans Administration records, and requested the board to obtain and consider them. There was attached to the application plaintiff’s letter of April 25, 1966, to the Office of Veterans Affairs, State of Alabama, in which he complained that his Veterans Administration records had not been previously sent to the correction board, and in which he stated that he had requested appearance before a Physical Evaluation Board on two occasions during his discharge procedures, as related in findings 7 and 8, and that the Veterans Administration had rated him 60 percent disabled from the date of his discharge from the Army.
44. By letter dated May 23, 1966, to the National Rehabilitation Commission of The American Legion, from the Executive Secretary, Army Board for Correction of Military Records, plaintiff was advised that his last application was treated as a request for reconsideration of his case, that the *606 pertinent records in his case had been carefully reviewed, that no basis has been found which would support changing the decision previously rendered, and that his request for reconsideration was denied. The letter otherwise stated in pertinent part as follows:
The regulations governing the operation of the Army Board for Correction of Military Records provide that it may deny an application without a formal hearing if insufficient evidence has been presented, or if the military records of the individual concerned do not indicate probable material error or injustice.
A review of the records of this office reveals that Mr. Taylor’s application and military and medical records, including records obtained from the Veterans Administration, were carefully considered by the Board on 23 March 1966. It was determined, as a result of such review, that no material evidence of error or injustice was shown to warrant granting a formal hearing of the case, and the application was therefore denied.
The Career Compensation Act of 1949, as amended, which relates to disability retirement from the Army, provides that at the time of separation, an individual must be found unfit to perform the duties of his office, rank or grade by reason of physical disability incurred in line of duty to qualify for such benefits. If an individual is found to be unfit, a rating in accordance with the Veterans Administration Schedule for Rating Disabilities is assigned to this condition. In the absence of a finding of unfitness, no rating is assigned by the Army to any existing disability or disabilities. The Veterans Administration, on the other hand, is not required by law to determine unfitness and may award compensation on the basis that a disability exists, using the same rating schedule. Consequently, due to the two different concepts involved, Mr. Taylor’s disabilities, not considered disqualifying by the Army, were considered by the Veterans Administration to qualify him for disability compensation benefits with a combined rating of 60 per cent.
45. In plaintiff’s application of August 9, 1965, he stated that he did not desire to appear before the Correction Board, but in the application of April 25,1966, he stated that he desired to appear before the board at no expense to the Government. Plaintiff did not receive any communications from the board except those mentioned in the foregoing findings, and did not appear before the board.
*607 46. At the time plaintiff testified in the trial of this case in this court, he was wearing a neck brace because of his cervical condition, and his bed at home is equipped with certain traction equipment for treatment of that condition. He has been advised by a physician that to prevent muscle spasms he should avoid activity which would jar or jerk his neck, such as riding on bumpy roads, tractors, or engaging in activity involving sudden movement. His right knee was wrapped with an elastic-type bandage, and his left knee was substantially swollen, although not as bad as during the latter part of his Army Service. He credited the improvement to medication prescribed by Veterans Administration doctors.
Ultimate Findings AND CoNClusioNS
47. The action of the Army Board for Correction of Military Records, denying plaintiff a hearing, was arbitrary, capricious, and contrary to the overwhelming weight of the evidence, upon which it must be concluded that in all reason plaintiff should have been granted a hearing, when Army physical evaluation proceedings had not been provided, in contrast to the extensive evaluation procedures of the Veterans Administration. Smith v. United States, 168 Ct. Cl. 545, 553 (1964); Farrar v. United States, 173 Ct. Cl. 1008, 1034, 358 F. 2d 965 (1965); Hoppock v. United States, 176 Ct. Cl. 1147, 1167 (1966).
48. The evidence in this case clearly establishes that at the time of his release from active duty on May 28,1962, plaintiff was permanently incapacitated for active military duty, that his disability should have been rated at 60 percent at that time, and that the causes of his incapacity and the incapacity itself were incidents of the service. Smith v. United States, supra; Farrar v. United States, supra; Hoppock v. United States, supra.
CONCLUSION or Law
Based upon the foregoing findings of fact and ultimate findings and conclusions, which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover, and that *608 judgment should be entered to that effect, with the amount of recovery to be determined in further proceedings pursuant to Rule 1'31 (c).